IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DENISE R. SITO, | ) | CASE NO. 3:15 CV 2551 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| | ) | MEMORANDUM OPINION AND |
| Defendant. | ) | ORDER |
| | ) | |

## Introduction

Before me[1]  is an action by Denise Renee Sito under 42 U.S.C. § 405(g) for judicial

review of the final decision of the Commissioner of Social Security denying her application

for disability insurance benefits.[2]  The Commissioner has answered[3] and filed the transcript

of the administrative record.[4]  Under my initial[5] and procedural[6] orders, the parties have

---

[1] ECF # 32. The parties have consented to my exercise of jurisdiction.

[2] ECF # 1.

[3] ECF # 11.

[4] ECF # 12.

[5] ECF # 7.

[6] ECF # 13.

briefed their positions[7] and filed supplemental charts[8] and the fact sheet.[9] They have participated in a telephonic oral argument.[10]

## Facts

### A.  Background facts and decision of the Administrative Law Judge ("ALJ")

Sito who was 48 years old at the time of the administrative hearing,[11] is a high school graduate[12] who lives with her husband and his two children.[13] Her past relevant work history includes employment as a cashier, waitress, bartender, small parts assembler, janitor and machine operator.[14]

The ALJ, whose decision became the final decision of the Commissioner, found that Sito had the following severe impairments: depression/dysthymic disorder (20 CFR 404.1520(C)).[15]

---

[7] ECF # 26 (Commissioner's brief); ECF # 20 (Sito's brief).

[8] ECF # 26-1 (Commissioner's charts); ECF # 21 at 3-7 (Sito's charts).

[9] ECF # 21 at 1-2 (Sito's fact sheet).

[10] ECF # 30.

[11] ECF # 21 at 1.

[12] *Id.*

[13] ECF # 12, Transcript ("Tr.") at 33.

[14] ECF # 21 at 1.

[15] Tr. at 15.

After concluding that the relevant impairments did not meet or equal a listing, the ALJ made the following finding regarding Sito's residual functional capacity ("RFC"):

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: no climbing ladders and the like and no exposure to obvious hazards. The claimant could also: understand, carry out and remember simple instructions where the pace of productivity is not dictated by an external source over which the claimant has no control such as an assembly line or conveyor belt; make judgments on simple work, and respond appropriately to usual work situations and changes in a routine work setting that is repetitive from day to day with few and expected changes; and respond appropriately to supervision, the general public and coworkers.[16]

Based on that residual functional capacity, the ALJ found Sito capable of her past relevant work as a small parts assembler and, therefore, not under a disability.[17]

Based on an answer to a hypothetical question posed to the vocational expert at the hearing setting forth the residual functional capacity finding quoted above, the ALJ determined that a significant number of jobs existed locally and nationally that Sito could perform.[18] The ALJ, therefore, found Sito not under a disability.[19]

---

[16] *Id.* at 19.

[17] *Id.* at 21.

[18] *Id*. at 22.

[19] *Id*. at 23.

**B.     Issues on judicial review**

Sito asks for reversal of the Commissioner's decision on the ground that it does not have the support of substantial evidence in the administrative record. Specifically, Sito presents the following issues for judicial review:

- Whether the final agency decision is not supported by substantial evidence because there were two separate administrative hearings but no explanation for if or why plaintiff's case may have been reassigned to a different ALJ after the first hearing. Thereby, the agency decision erred by failing to address plaintiff's testimony at the first hearing and the agency also violated plaintiff's constitutional due process rights.[20]

- Whether the ALJ found at Step 2 that plaintiff's physical impairments were non-medially determinable impairments. This finding lacks the support of substantial evidence because the ALJ failed to properly consider plaintiff's physical impairments.[21]

- Whether the ALJ found at Step 3 that plaintiff has the RFC to perform a full range of work at all exertional levels with some non-exertional limitations. This finding lacks support of substantial evidence because the ALJ failed to properly consider the opinion evidence of record and failed to consider the combined effects of plaintiff's severe mental impairment and non-medically determinable physical impairments.[22]

- Whether the ALJ found at Step 3 that plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms are not entirely credible. This finding lacks support of substantial evidence because the reasons given by the ALJ for the credibility assessment are not supported by the evidence of the record.[23]

---

[20] ECF #20 at 1.

[21] *Id.*

[22] *Id.*

[23] *Id.*

- Whether the ALJ found at Step 4 that, through the date last insured, plaintiff was capable of performing past relevant work as a small parts assembler and at Step 5 that plaintiff was capable of making a successful adjustment to other work that existed in significant numbers in the national economy. These findings lack the support of substantial evidence because the ALJ relied on responses to an incomplete hypothetical question, plaintiff's past work and the jobs identified by the VE are inconsistent with the ALJ's RFC determination, and the ALJ's errors at the previous steps make the Steps 4 and 5 findings inherently unsupported by substantial evidence.[24]

- Whether the Appeals Council erred as a matter of law in failing to consider new and material evidence.[25]

For the reasons that follow, I will conclude that the ALJ's finding of no disability is not supported by substantial evidence and, therefore, must be reversed and remanded.

## Analysis

**A.   Standards of review**

*1.   Substantial evidence*

The Sixth Circuit in *Buxton v. Halter* reemphasized the standard of review applicable to decisions of the ALJs in disability cases:

> Congress has provided for federal court review of Social Security administrative decisions. 42 U.S.C. § 405(g). However, the scope of review is limited under 42 U.S.C. § 405(g): "The findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." In other words, on review of the Commissioner's decision that claimant is not totally disabled within the meaning of the Social Security Act, the only issue reviewable by this court is whether the decision is supported by substantial evidence.

---

[24] *Id*. at 1-2.

[25] *Id*.

-5-

Substantial evidence is " 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' "

The findings of the Commissioner are not subject to reversal merely because there exists in the record substantial evidence to support a different conclusion. This is so because there is a "zone of choice" within which the Commissioner can act, without the fear of court interference.[26]

Viewed in the context of a jury trial, all that is necessary to affirm is that reasonable minds could reach different conclusions on the evidence. If such is the case, the Commissioner survives "a directed verdict" and wins.[27] The court may not disturb the Commissioner's findings, even if the preponderance of the evidence favors the claimant.[28]

I will review the findings of the ALJ at issue here consistent with that deferential standard.

**2.    *Treating physician rule and good reasons requirement***

The regulations of the Social Security Administration require the Commissioner to give more weight to opinions of treating sources than to those of non-treating sources under appropriate circumstances.

Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring

---

[26] *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001) (citations omitted).

[27] *LeMaster v. Sec'y of Health & Human Servs.*, 802 F.2d 839, 840 (6th Cir. 1986); *Tucker v. Comm'r of Soc. Sec.*, No. 3:06-CV-403, 2008 WL 399573, at *6 (S.D. Ohio Feb. 12, 2008).

[28] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).

> a unique perspective to the medical evidence that cannot be obtained from objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.[29]

If such opinions are "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record," then they must receive "controlling" weight.[30]

The ALJ has the ultimate responsibility for determining whether a claimant is disabled.[31] Conclusory statements by the treating source that the claimant is disabled are not entitled to deference under the regulation.[32]

The regulation does cover treating source opinions as to a claimant's exertional limitations and work-related capacity in light of those limitations.[33] Although the treating source's report need not contain all the supporting evidence to warrant the assignment of controlling weight to it,[34] nevertheless, it must be "well-supported by medically acceptable clinical and laboratory diagnostic techniques" to receive such weight.[35] In deciding if such

---

[29] 20 C.F.R. § 404.1527(d)(2).

[30] *Id.*

[31] *Schuler v. Comm'r of Soc. Sec.*, 109 F. App'x 97, 101 (6th Cir. 2004).

[32] *Id.*

[33] *Swain v. Comm'r of Soc. Sec.*, 297 F. Supp. 2d 986, 991 (N.D. Ohio 2003), citing *Green-Younger v. Barnhart*, 335 F.3d 99, 106-07 (2nd Cir. 2003).

[34] *Garner v. Heckler*, 745 F.2d 383, 391 (6th Cir. 1984).

[35] *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 536 (6th Cir. 2001).

supporting evidence exists, the Court will review the administrative record as a whole and may rely on evidence not cited by the ALJ.[36]

In *Wilson v. Commissioner of Social Security*,[37] the Sixth Circuit discussed the treating source rule in the regulations with particular emphasis on the requirement that the agency "give good reasons" for not affording controlling weight to a treating physician's opinion in the context of a disability determination.[38] The court noted that the regulation expressly contains a "good reasons" requirement.[39] The court stated that to meet this obligation to give good reasons for discounting a treating source's opinion, the ALJ must do the following:

- State that the opinion is not supported by medically acceptable clinical and laboratory techniques or is inconsistent with other evidence in the case record.

- Identify evidence supporting such finding.

- Explain the application of the factors listed in 20 C.F.R. § 404.1527(d)(2) to determine the weight that should be given to the treating source's opinion.[40]

The court went on to hold that the failure to articulate good reasons for discounting the treating source's opinion is not harmless error.[41] It drew a distinction between a

---

[36] *Id.* at 535.

[37] *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004).

[38] *Id.* at 544.

[39] *Id.*, citing and quoting 20 C.F.R. § 404.1527(d)(2).

[40] *Id.* at 546.

[41] *Id.*

-8-

regulation that bestows procedural benefits upon a party and one promulgated for the orderly transaction of the agency's business.[42] The former confers a substantial, procedural right on the party invoking it that cannot be set aside for harmless error.[43] It concluded that the requirement in § 1527(d)(2) for articulation of good reasons for not giving controlling weight to a treating physician's opinion created a substantial right exempt from the harmless error rule.[44]

The Sixth Circuit in *Gayheart v. Commissioner of Social Security*[45] recently emphasized that the regulations require two distinct analyses, applying two separate standards, in assessing the opinions of treating sources.[46] This does not represent a new interpretation of the treating physician rule. Rather it reinforces and underscores what that court had previously said in cases such as *Rogers v. Commissioner of Social Security*,[47] *Blakley v. Commissioner of Social Security*,[48] and *Hensley v. Astrue*.[49]

---

[42] *Id.*

[43] *Id.*

[44] *Id.*

[45] *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013).

[46] *Id.* at 375-76.

[47] *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 242 (6th Cir. 2007).

[48] *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406-07 (6th Cir. 2009).

[49] *Hensley v. Astrue*, 573 F.3d 263, 266 (6th Cir. 2009).

As explained in *Gayheart*, the ALJ must first consider if the treating source's opinion should receive controlling weight.[50] The opinion must receive controlling weight if (1) well-supported by clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence in the administrative record.[51] These factors are expressly set out in 20 C.F.R. §§ 404.1527(d)(2). Only if the ALJ decides not to give the treating source's opinion controlling weight will the analysis proceed to what weight the opinion should receive based on the factors set forth in 20 C.F.R. §§ 404.1527(d)(2)(i)-(ii), (3)-(6).[52] The treating source's non-controlling status notwithstanding, "there remains a presumption, albeit a rebuttable one, that the treating physician is entitled to great deference."[53]

The court in *Gayheart* cautioned against collapsing these two distinct analyses into one.[54] The ALJ in *Gayheart* made no finding as to controlling weight and did not apply the standards for controlling weight set out in the regulation.[55] Rather, the ALJ merely assigned the opinion of the treating physician little weight and explained that finding by the secondary criteria set out in §§ 1527(d)(i)-(ii), (3)-(6) of the regulations,[56] specifically the frequency of

---

[50] *Gayheart*, 710 F.3d at 376.

[51] *Id.*

[52] *Id.*

[53] *Rogers*, 486 F.3d at 242.

[54] *Gayheart*, 710 F.3d at 376.

[55] *Id.*

[56] *Id.*

the psychiatrist's treatment of the claimant and internal inconsistencies between the opinions and the treatment reports.[57] The court concluded that the ALJ failed to provide "good reasons" for not giving the treating source's opinion controlling weight.[58]

> But the ALJ did not provide "good reasons" for why Dr. Onady's opinions fail to meet either prong of this test.
>
> To be sure, the ALJ discusses the frequency and nature of Dr. Onady's treatment relationship with Gayheart, as well as alleged internal inconsistencies between the doctor's opinions and portions of her reports. But these factors are properly applied only after the ALJ has determined that a treating-source opinion will not be given controlling weight.[59]

In a nutshell, the *Wilson/Gayheart* line of cases interpreting the Commissioner's regulations recognizes a rebuttable presumption that a treating source's opinion should receive controlling weight.[60] The ALJ must assign specific weight to the opinion of each treating source and, if the weight assigned is not controlling, then give good reasons for not giving those opinions controlling weight.[61] In articulating good reasons for assigning weight other than controlling, the ALJ must do more than state that the opinion of the treating

---

[57] *Id.*

[58] *Id.*

[59] *Id.*

[60] *Rogers*, 486 F.3d 234 at 242.

[61] *Blakley*, 581 F.3d at 406-07.

-11-

physician disagrees with the opinion of a non-treating physician[62] or that objective medical evidence does not support that opinion.[63]

The failure of an ALJ to follow the procedural rules for assigning weight to the opinions of treating sources and the giving of good reason for the weight assigned denotes a lack of substantial evidence even if the decision of the ALJ may be justified based on the record.[64] The Commissioner's *post hoc* arguments on judicial review are immaterial.[65]

Given the significant implications of a failure to properly articulate (*i.e.*, remand mandated by the *Wilson* decision, an ALJ should structure the decision to remove any doubt as to the weight given the treating source's opinion and the reasons for assigning such weight. In a single paragraph the ALJ should state what weight he or she assigns to the treating source's opinion and then discuss the evidence of record supporting that assignment. Where the treating source's opinion does not receive controlling weight, the decision must justify the assignment given in light of the factors set out in §§ 1527(d)(1)-(6).

The Sixth Circuit has identified certain breaches of the *Wilson* rules as grounds for reversal and remand:

---

[62] *Hensley*, 573 F.3d at 266-67.

[63] *Friend v. Comm'r of Soc. Sec.*, 375 F. App'x 543, 551-52 (6th Cir. 2010).

[64] *Blakley*, 581 F.3d at 407.

[65] *Wooten v. Astrue*, No. 1:09-CV-981, 2010 WL 184147, at *8 (N.D. Ohio Jan. 14, 2010).

- the failure to mention and consider the opinion of a treating source,[66]

- the rejection or discounting of the weight of a treating source without assigning weight,[67]

- the failure to explain how the opinion of a source properly considered as a treating source is weighed (*i.e.*, treating v. examining),[68]

- the elevation of the opinion of a nonexamining source over that of a treating source if the nonexamining source has not reviewed the opinion of the treating source,[69]

- the rejection of the opinion of a treating source because it conflicts with the opinion of another medical source without an explanation of the reason therefor,[70] and

- the rejection of the opinion of a treating source for inconsistency with other evidence in the record without an explanation of why "the treating physician's conclusion gets the short end of the stick."[71]

The Sixth Circuit in *Blakley*[72] expressed skepticism as to the Commissioner's argument that the error should be viewed as harmless since substantial evidence exists to support the ultimate finding.[73] Specifically, *Blakley* concluded that "even if we were to agree

---

[66] *Blakley*, 581 F.3d at 407-08.

[67] *Id.* at 408.

[68] *Id.*

[69] *Id.* at 409.

[70] *Hensley*, 573 F.3d at 266-67.

[71] *Friend*, 375 F. App'x at 551-52.

[72] *Blakley*, 581 F.3d 399.

[73] *Id.* at 409-10.

that substantial evidence supports the ALJ's weighing of each of these doctors' opinions, substantial evidence alone does not excuse non-compliance with 20 C.F.R. § 404.1527(d)(2) as harmless error."[74]

In *Cole v. Astrue*,[75] the Sixth Circuit reemphasized that harmless error sufficient to excuse the breach of the treating source rule only exists if the opinion it issues is so patently deficient as to make it incredible, if the Commissioner implicitly adopts the source's opinion or makes findings consistent with it, or if the goal of the treating source regulation is satisfied despite non-compliance.[76]

## B.    Application of standards

The Commissioner's decision in this case occurred after a second ALJ held a second hearing on the claimant's application.[77]  The first hearing did not result in a final decision by that ALJ, but did contain testimony from a VE that Sito would be unable to perform any work in the national economy, given a hypothetical specifying a lack of prior relevant work and a current limitation to less than a full range of light work.[78]  At the second hearing, in response to a different hypothetical which indicated an ability to do a full range of work at

---

[74] *Id.* at 410.

[75] *Cole v. Astrue*, 661 F.3d 931 (6th Cir. 2011).

[76] *Id.* at 940.

[77] Tr. at 29-81.

[78] *Id.* at 80.

-14-

all exertional levels and some non-exertional limitations, another VE testified that Sito could perform her past relevant work.[79]

Sito here raises several issues on review, of which two will be individually addressed below.

## 1.    Due process

Sito asserts that due process, as expressed in the agency's HALLEX manual,[80] requires that the Commissioner provide an explanation as to why the first ALJ did not issue a decision after conducting a full hearing, and further mandates that the second ALJ fully consider the evidence of the prior hearing, and conclusively demonstrate that consideration in the text of the opinion.[81]

In that regard, I observe that there has been some confusion as to whether this case represents a "reopening" of the earlier hearing or a "reassignment" of an undecided case to a new ALJ.[82]  That said, it seems clear that Sito's arguments in this respect are essentially that she should have been informed as to why no decision was rendered after the first hearing

---

[79] *Id*. at 54-55.

[80] HALLEX is the acronym for the Hearing, Appeals, Litigation and Law (LEX) Manual, and consists of both a procedural guideline and substantive material. *Kostyo v. Colvin*, No. 3:14-CV-1238, 2015 WL 4067260, at *7 fn. 3 (N.D. Ohio July 2, 2015).

[81] ECF # 20 at 14-15.

[82] *See*, ECF # 29 at 1.

and should have seen evidence in the text of the ALJ's opinion that the ALJ fully considered the record of the first hearing.[83]

The Supreme Court has stated that the "fundamental requirement of due process is the opportunity to be heard 'at a meaningful time and in a meaningful manner.'"[84] Additionally, the Sixth Circuit has held that disability claimants are entitled to due process at the hearing level because they have a property interest in any potential benefit.[85]  To that end, an ALJ must ensure that the hearing is "full and fair."[86]

Examining that rubric in the present situation, Sito, as noted, claims that she was denied due process because the record in this case does not indicate why no decision issued after the first hearing and because the ALJ's decision after the second hearing does not affirmatively reflect that the evidence of the first hearing was considered.  In support she cites to provisions of the Hearings, Appeals and Litigation Law Manual ("HALLEX") that address how an ALJ at a second hearing is to consider evidence obtained in the first hearing.[87]

---

[83] *Id*. at 1-3.

[84] *Mathews v. Eldridge,* 424 U.S. 319, 333 (1976)(quoting *Armstrong v. Manzo,* 380 U.S. 545, 552 (1965)).

[85] *Flatford v. Chater*, 93 F.3d 1296, 1304 (6th Cir. 1996).

[86] *Id*. at 1306.

[87] ECF # 20 at 15.

-16-

In that regard, I note first that the Sixth Circuit has characterized HALLEX as a source of "guiding principles, procedural guidance and information" to ALJs and agency staff.[88] That said, it must be understood that "[w]hile the HALLEX procedures are binding on the Social Security Administration, they are not binding on courts reviewing the administration's proceedings."[89] Thus, Sito's attempt to ground a reversible due process violation solely on the Commissioner's purported lack of adherence to some provision of HALLEX must necessarily fail.[90]

Similarly, Sito's argument that it was error for the ALJ here to not explicitly discuss unspecified portions of the prior record is also unpersuasive. As the Sixth Circuit observed

---

[88] *Bowie v. Commissioner of Social Security,* 539 F.3d 395, 397 (6th Cir. 2008)(quoting HALLEX § 1-1-001)).

[89] *Kostyo*, 2015 WL 4067260, at *7 (quoting *Dukes v. Comm'r of Soc. Sec.*, No. 1:10-CV-436, 2011 WL 4374557, at *9 (W.D. Mich. Sept. 19, 2011)(citing *Bowie*, 539 F.3d at 399)(noting that the procedural guidelines in the HALLEX manual are "not binding on this court"). I also observe that despite the comment in *Bowie* quoted above, the Sixth Circuit has not explicitly addressed the question of whether the failure to follow a provision of the HALLEx manual is reversible error. As a Kentucky district court found in *Caudill v. Astrue*, No. CIV.A. 09-70-GWU, 2010 WL 148806 at *4 (E.D. Ky. Jan. 14, 2010), the Ninth Circuit has concluded in *More v. Apfel*, 216 F.3d 864, 868 (9th Cir. 2000) that HALLEX is purely an internal manual with no legal force in judicial review, while the Fifth Circuit in *Newton v. Apfel*, 209 F.3d 448, 459-60 (5th Cir. 2000) has held that although HALLEX does not have the force of law, an agency must follow its own regulations where individual rights are concerned.

[90] Given the split in the circuits outlined above, and the *dicta* in *Bowie* also quoted above, *Caudill* concluded, and Magistrate Judge White in *Kostyo* agreed, that the mere failure to follow specific procedures in the HALLEX manual is itself not grounds for reversal absent a convincing showing of prejudice to the plaintiff. *See, Kostyo*, 2015 WL 4067260 at *7 fn. 4.

in *Simons v. Barnhart*,[91] "an ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered."[92] Rather, the key for meaningful judicial review is the requirement that an ALJ identify and discuss only such substantial evidence and good reasons as would support any determination made.[93]

Moreover, as the Commissioner notes here, Sito was represented at all stages of the administrative proceeding in this case and her counsel made no objections to the rehearing or notice of rehearing, or requests for additional explanations or reasons.[94]  As the *McMurtry* court observed, "[c]onsistent with the policy that represented claimants for Social Security benefits are presumed to have brought their most persuasive claim for benefits before the ALJ," ALJs ordinarily require counsel to identify any issue or issues thought to require further attention.[95]  It is again difficult to find a reversible due process violation in actions taken with full knowledge of counsel but without any objection.

2.    ***Step 2***

Sito argues that it was error for the ALJ to find her foot, back, and neck problems, as well as her fibromyalgia and diverticulitis are non-medically determinable impairments found

---

[91]  *Simons v. Barnhart*, 114 Fed. Appx. 727 (6th Cir. 2004).

[92] *Id.* at 733 (quoting *Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000)).

[93] *See, e.g., Rogers*, 486 F.3d at 242-43.

[94] *See*, ECF # 26 at 7 (citing transcript).

[95] *McMurtry*, 749 F.Supp. 2d at 882 (citation omitted).

after her date of last insured.[96]  In particular, Sito claims this finding is contrary to a report by her treating physician in January 2012 - less than four months after the date last insured - reflecting diagnoses of degenerative disc disease, neck, low back and myofascial thorasic pain, fibromyalgia and depression.[97]  She also asserts that the ALJ incorrectly rejected her fibromyalgia impairment because she was improperly focused on a lack of objective evidence instead of considering the diagnosis of the treating physician.[98]

The Commissioner responds by noting that even if it was error not to find these conditions to be severe impairments at Step Two, any error is harmless because the ALJ did find other conditions to be severe impairments, and proceeded to analyze all of Sito's physical and mental impairments - severe and non-severe - in the balance of the opinion.[99]

The key issue in this regard concerns the treatment of the opinions and diagnoses of Robert Kanney, M.D., Sito's treating physician. He lists fibromyalgia as one of Sito's diagnosis in his answers to a functional capacity questionnaire completed in January 2012, wherein he also notes that he had been treating Sito for "7-10 years."[100]

---

[96] ECF # 20 at 16-17.

[97] *Id*. at 16.

[98] *Id*. at 17.

[99] ECF # 26 at 8-9.

[100] Tr. at 436; *but see, id.* at 650 where Dr. Kanney two years later states that he has been treating Sito for "over twenty years."

-19-

The ALJ, however, did not mention this diagnosis by Dr. Kanney, but referenced Sito's own reporting of a fibromyalgia diagnosis to Dr. Christina Feser, D.O.,[101] a consulting examining source, whose functional opinion is not discussed by the ALJ.  In so doing, the ALJ also failed to identify Dr. Kanney as a treating source and assigned little weight to his functional opinions because the opinions were rendered after the date last insured, and because the opinions themselves did not indicate that the limitations expressed within would have been needed during the insured period.[102]

Just as significant, the ALJ dismissed the self-reported diagnosis of fibromyalgia by stating that a diagnosis of fibromyalgia may not be based solely on the conclusion of a physician who himself received a report of a history of fibromyalgia from the patient, but must be supported by evidence that the physician has reviewed the patient's medical history and conducted a physical examination which produced findings that the patient "has at least 11 positive trigger points" supportive of a diagnosis of fibromyalgia.[103]

Yet, however broadly true this may be as to the conclusion of Dr. Feser, who actually did conduct a physical examination of Sito but merely heard about a prior diagnosis of fibromyalgia, the ALJ's remarks are far less probative of Dr. Kanney, who had, as noted, a

---

[101] *Id*. at 16 (citing *id.* at 626-31).

[102] *Id*. at 20. The failure of the ALJ to identify a source as a "treating source' is a ground for remand.  *Blakely*, 581 F.3d at 408.

[103] *Id*. at 16.

multi-year treating relationship with Sito and who recorded a fibromyalgia diagnosis which was not attributed to self-reporting by Sito.

I note in this regard that my own review of the medical records here shows that there appears to be both a lack of clarity and certainty as to when and how Sito came to be diagnosed with fibromyalgia.  On April 7, 2005 Dr. Tauseef G. Sayed, M.D., submitted a request to the Ohio Bureau of Workers' Compensation for authorization to have Sito undergo four weeks of physical therapy for what Dr. Sayed diagnosed as "myalgia."[104]  There are no clear records as to the basis for that diagnosis.[105]  More importantly, "myalgia" technically refers only to pain in the muscles, whereas fibromyalgia concerns pain in the joints, muscles and fibrous connective tissue.[106]

Dr. Sayed's 2005 "myalgia" diagnosis appears to have been reported by Sito in 2006 as a diagnosis of "fibromyalgia" as she gave her medical history to Barbara Florke, a Clinical Nurse Specialist at Maumee Valley Guidance Center.[107]  There is no indication from the record that Dr. Kanney's diagnosis of fibromyalgia was based on his own examinations of

---

[104] *Id*. at 437.

[105] The two-page supporting document sent to the BWC by Dr. Sayed contains a body diagram reflecting moderate pain on a scale of 3-6 in Sito's shoulders and shooting pain on a scale of 7-8 in her neck and 9-10 in her ankles. *Id*. at 346.

[106] *See,* http://howshealth/myalgia

[107] *Id*. at 362.

-21-

Sito as her treating physician, or if Dr. Kanney simply recorded Sito as erroneously reporting Dr. Sayed's "myalgia" diagnosis as "fibromyalgia."

Moreover, although the ALJ here stated that to support a diagnosis of fibromyalgia a patient's physical examination "must" show eleven positive trigger points,[108] the applicable law does not necessarily contain such a strict, bright line rule. Specifically, in 2012 the Commissioner issued SSR 12-2P[109] which stated that fibromyalgia could be termed a medically determinable impairment if the evidence met the criteria set forth in either the 1990 classification criteria of the American College of Rheumatology or that organization's 2010 preliminary diagnostic criteria.[110]  In that regard, the trigger point analysis exists in only the 1990 classification criteria, but is not part of the 2010 preliminary diagnostic criteria, which focuses on the presence of widespread pain in connection with other symptoms such as fatigue, depression and anxiety, in addition to evidence that excludes other causes for these symptoms.[111]  Under either standard, SSR 12-2P emphasizes that "longitudinal records" -

---

[108] *Id.* at 16.

[109] 2012 WL 3104869

[110] *Id.* at *2.

[111] *Id.* at *3. *See also*, *Foster v. Colvin*, No. 3:14-CV-66, 2015 WL 66553 at ** 7-8 (S.D. Ohio Jan. 5, 2015)(extensive discussion of the two diagnostic criteria contained in SSR 12-2P, reversing a decision of an ALJ that failed to consider the non-trigger point tests of SSR 12-2P).

such as would be present with a treating physician - are "especially helpful in establishing both the existence and severity of the impairment."[112]

Here, although the ALJ did directly cite to SSR 12-2P in discussing Sito's fibromyalgia,[113] she mis-characterized that regulation as requiring a clinical finding of eleven positive trigger points to support a diagnosis of fibromyalgia, thus overlooking entirely the alternative test set forth in SSR 12-2P which does not contain trigger point testing. That alone is grounds for a remand.[114]

Further, and as noted above, the ALJ gave little weight to the functional opinion of Dr. Kanney,[115] a treating source who included fibromyalgia as one of his diagnosis in his 2012 physical impairment questionnaire.[116] The reason given for according such little weight - that the opinion itself was issued after the date last insured and does not indicate that the limitations apply to the relevant period - are simply not a good reasons.[117] As the Sixth Circuit observed in *Wilson*, functional limitations expressed by a treating source as the result

---

[112] *Id.* at * 3.

[113] Tr. at 16.

[114] *Foster*, 2015 WL 66553 at *8.

[115] Tr. at 20.

[116] *Id.* at 436. It must be noted that Dr. Kanney did not include a diagnosis of "fibromyalgia" on his 2013 functional capacity questionnaire, although he did list "pain" and "fatigue" as her symptoms. Tr. at 623. A later functional capacity questionnaire is discussed below.

[117] *See, Wilson,* 378 F.3d at 545.

of treating the claimant during the insured period would necessarily be supported by what was observed during that same period, and so even if the opinion itself were drafted at a date beyond the date last insured, the functional opinion itself, without more, cannot be reasonably construed as offering an opinion only as to the period after the date last insured.[118]

As has also been noted, the opinions of Dr. Kanney themselves are not themselves entirely consistent or clear as to the length of the treatment relationship, the diagnoses given or the symptoms recorded, and there are gaps in the record as to supporting treatment notes. But, these opinions do represent the views of a physician who treated Sito for a considerable period of time, and who has recorded functional limitations that are more restrictive than those in the RFC. As such, it is critical that Dr. Kanney's opinions be properly weighed and fully analyzed in accordance with the treating physician rubric - something which was not done here.[119] To the degree that the opinions are found to be supported by clinical and diagnostic tests and to be consistent with the other evidence in the record, Dr. Kanney's opinions may provide the kind of "longitudinal records" that are especially helpful in establishing the existence and severity of an impairment like fibromyalgia, particularly when it has not been established by means of trigger point tests.[120]

---

[118] *Id*. at 545-46. I note also that on June 2, 2014, or the day before the ALJ's current opinion issued, Dr. Kanney submitted another functional capacity report for the record. Tr. at 647. That opinion also does not specifically list fibromyalgia as a diagnosis, and, unlike prior reports, left blank the space for listing symptoms (Tr. at 648), but does state that Sito has had the functional limitations expressed since 2001. Tr. at 650.

[119] *Blakely*, 581 F.3d at 408.

[120] *See*, *Foster*, 2015 WL 66553 at ** 7-8.

## Conclusion

For the reasons stated, I find that the Commissioner's decision to deny benefits is not supported by substantial evidence and is therefore reversed. The matter is remanded for further proceedings consistent with this opinion.


Dated: January 17, 2017                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge